## Peter A. Strubhar v. William Misch and Louis Misch.

1. CONTRACTS—*Will be Enforced as Made.*—A contract for the sale of a stock of goods provided that the value of the stock should be ascertained by invoicing it at cost prices, these to be obtained from the bills of purchase where such bills were in the possession of the vendor, and where they were not, the cost prices marked on the goods to be taken as the cost or price at which they should be invoiced. *Held,* that the vendor was not bound to try to procure duplicate bills where the originals could not be found and that the contract must be enforced as executed in the absence of proof of fraud in marking the goods.

**Assumpsit,** on a contract of sale. Appeal from the Circuit Court of Iroquois County; the Hon. THOMAS F. TIPTON, Judge, presiding. Heard in this court at the May term, 1896. Affirmed. Opinion filed December 9, 1896.

ISAAC M. HAMILTON, attorney for appellant; PAYSON & KESSLER, of counsel.

FREE P. MORRIS and FRANK L. HOOPER, attorneys for appellees.

MR. JUSTICE CRABTREE DELIVERED THE OPINION OF THE COURT.

This was an action of assumpsit by appellees against appellant, to recover damages for the breach of a written contract, whereby appellant had agreed to convey to appellees 160 acres of land in exchange for a stock of goods.

There was a trial by jury and appellees had a verdict and judgment for $1,000.

Appellant was the owner of a farm of 160 acres subject to an incumbrance of $4,000, and appellees, as partners, owned a stock of goods and merchandise. The parties agreed to make an exchange, the farm to be valued at $65 per acre, and the value of the stock of goods to be ascertained by invoicing them at cost prices, these to be obtained from the bills of purchase where appellees had such bills, and where they did not, the cost prices marked on the goods were to be taken as the cost or price at which they should be invoiced to appellants. If upon taking the invoice it was found that the stock of goods was worth more than the farm at $65 per acre, appellant was to pay the difference in cash. On the other hand if the stock of goods should prove to be worth less than the farm, appellees should pay the difference. The contract was in writing and contained the following provision: "It is further understood and agreed by and between the parties hereto, that in case either party shall fail or refuse to comply with the agreements hereinbefore stated, that said party so failing agrees to pay the other party $1,000 as a damage resulting from said failure." The invoice was to be taken at any

Strubhar v. Misch.

time between February 15, 1894, and March 1st of the same year, and the exchange was then to be made.

When the time came to carry out the contract, appellant went to the store of appellees with two men to help him in invoicing the stock, and he swears he was then ready and willing to carry out the contract, and that he then had a deed for the farm executed and ready for delivery. The evidence shows that appellant and his two friends looked over the stock, and the parties then commenced taking the invoice, but the work had not proceeded far, when appellant's assistants began to claim that the goods were marked too high and appellant demanded a reduction of the prices. This being refused, appellant and his friends ceased taking the invoice and went away, appellant refusing to carry out the trade. His claim was and is, that the goods were fraudulently marked too high, that appellees refused to furnish bills of purchase to verify the cost prices, and also refused to procure duplicate bills of purchase. On the other hand, both of the appellees and one or two of their clerks testify that the goods were marked at fair cost prices, and that the cost marks had not been in any manner changed since the trade was first talked of, and that all the bills of purchase which they had were produced and offered to appellant. There is some conflict in the evidence as to the bills which were produced, but if the jury believed the statements of appellees and their witnesses they did all that the contract required them to do and were not in default. They were not bound to try and procure duplicate bills for goods purchased years before, because the contract did not provide for it. On the contrary, the contract distinctly specified what should be done in the event that there were no bills, or in the absence of bills of purchase, viz., that the cost prices marked on the goods should be taken as the value thereof. There was no proof whatever of any fraudulent marking of goods by appellees. Even if the few shoes complained of were marked too high, the only difference shown by the evidence would be a very few dollars—a very few cents on a dozen or so pairs of shoes.

We think the appellant failed to show a good and substantial excuse for refusing to carry out the contract, and the jury were warranted in finding the objections raised as frivolous, and apparently gotten up for the purpose of enabling appellant to back out of the trade.

Under the circumstances the appellees were entitled to recover the liquidated damages of $1,000 provided for in the contract. Complaint is made as to the action of the court in giving and refusing instructions, but we find no error in that respect, and judgment being right under the evidence, it must be affirmed.